[No. 18886.  Department Two.  January 5, 1925.]

## B. F. SURRY et al., *Respondents*, v. HARRY A. BAKER et al., *Appellants*, WM. A. DOELLE, *as Trustee etc., Defendants*.[1]

MORTGAGES (13)—EQUITABLE MORTGAGE—EXECUTORY CONTRACT FOR PURCHASE OF LAND—RIGHTS OF ASSIGNEE. An equitable mortgage is not created by advances to the holder of an executory contract of purchase in possession, by one holding an assignment of the contract, as against the title of the owner or third persons, but only as against the interests of the assignor, which was neither a legal nor equitable title.

VENDOR AND PURCHASER (48)—RESCISSION BY VENDOR—ESTOPPEL OR WAIVER. The fact that a vendor had waived previous defaults, does not prevent his declaring a forfeiture, upon a written notice allowing sixty days within which to pay all overdue installments.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered May 10, 1924, upon findings in favor of the plaintiffs, in an action for rescission, tried to the court. Affirmed.

*Sumner & Lebeck,* for appellants.
*Fred Kemp,* for respondents.

HOLCOMB, J.—On August 25, 1919, respondents made a real estate sale contract to one Luttrell, by the terms of which they agreed to sell, and he agreed to buy, an orchard tract in Chelan county for $35,000. The contract recites the receipt of the initial payment of $15,000, and provides for the payment of the remainder in stated installments, due on December 15 each year, commencing with 1919 and ending in 1924. There were the usual covenants requiring the vendee to pay taxes, etc., making the times of payment thereof of the essence of the contract, and providing for forfeiture in the event of default in the payment of any install-

[1]Reported in 231 Pac. 791.

ment of moneys payable under the contract. Luttrell went into immediate possession of the premises and farmed it during the years 1919, 1920, 1921 and 1922, either personally or by tenant. The initial payment made by him was furnished by the Cashmere Apple Company, and in order to secure it, Luttrell assigned his purchase contract to it. That concern further agreed to, and did, finance Luttrell's growing and marketing operations during 1919, and made further payments of principal and interest to respondents.

In 1920, the Bohlke Fruit Company took over the interest of the Cashmere Apple Company, became the assignee of Luttrell in the contract, as security for money advanced and to be advanced, and agreed to finance Luttrell in the growing, harvesting and marketing of the crops to be raised on the land. In 1921 the Bohlke Fruit Company was adjudged a bankrupt, at a time when Luttrell was owing it approximately $22,000, practically all of which was for payments advanced to him on account of the contract with respondents.

Early in 1922, Luttrell, being in default on the contract and in need of financial assistance to grow and market future crops, and the Bohlke Fruit Company having declared it could finance him no longer, finally secured assistance from appellants. On January 17, 1922, appellants took an assignment of the Luttrell interest in the contract with respondents as security for advances then made and to be made in the future, on the then delinquent installments of principal and interest, made additional payments of principal and interest thereafter maturing, and advanced a considerable amount of money for the growing, harvesting and marketing of crops thereafter grown on the lands. By agreement of the parties thereto, the security of appellants, evidenced by the assignment of the con-

tract to them, was to be superior to all others. At this point it must be noted that the assignment last mentioned was entered into between appellants, Luttrell, the Bohlke Fruit Company, and one Nicks, who had some interest subordinate to the interest of Luttrell. During the years 1922 and 1923, they advanced many thousands of dollars to Luttrell for the fruit growing and marketing operations, and several thousand dollars as payments on principal and interest, and water assessments under respondents' contract. Most of the moneys advanced for the fruit growing and marketing operations were repaid out of funds received from the sale of the fruit. When appellants made the contract with Luttrell it was agreed that they would, in case Luttrell failed to do so, make the payments under the contract with respondents, so as to keep the contract in effect until 1924.

In December, 1923, Luttrell, being in default upon his contract with respondents, and also upon delinquent taxes and water assessments, respondents declared a forfeiture of the contract, causing notice thereof to be served upon the trustee in bankruptcy of the Bohlke Fruit Company, Nicks, and appellants. This notice was given because of the indulgences that had been theretofore granted the parties concerned in the sale of the premises under the sale contract. In the meantime, the trustee of the Bohlke Fruit Company, bankrupt, having cancelled its bills and accounts against Luttrell, received from him a quitclaim deed, thus succeeding to his rights and liabilities under the contract with respondents. The notice of forfeiture gave notice that unless all sums due under the contract which were delinquent were paid within sixty days the contract would be forfeited. The sixty-day period elapsed without any payments whatever being made on principal or interest installments or taxes

and irrigation district assessments payable under the contract, and on February 1, 1924, respondents elected to forfeit and terminate the real estate contract, and commenced their action against the defendant Doelle, as trustee in bankruptcy of the Bohlke Fruit Company, Nicks, as tenant under Luttrell, and appellants.

After the commencement of the action to recover possession of the real estate, respondent, the husband, who resided in California, came to Wenatchee and appellants made him an offer of $10,000, net, for the premises, appellants to assume the back taxes, court costs and attorney's fees in the forfeiture action. Respondent was willing to accept that, but after several conferences it finally came to nothing.

The total balance of the purchase price remaining unpaid at the time of the forfeiture amounted to $11,000. After appellants failed to comply with their offer of $10,000, net, to respondents, Doelle, trustee in bankruptcy, at the instance of a committee interested in the bankrupt Bohlke Fruit Company's estate, decided to take up respondents' cash offer. This offer was in effect that respondents would sell the orchard tract and give clear title to the trustee in bankruptcy upon receipt of $10,000 cash, plus the delinquent taxes that respondents had paid after reaching Wenatchee, $350 for attorney's fees, and the costs and expenses of the forfeiture suit. In accordance therewith a stipulation was entered into on March 11, 1924, between respondents and Doelle, trustee. In that stipulation, among other things, it was agreed that respondents should carry the forfeiture action through to final decree as against all other defendants except defendant Doelle, trustee, so that the title to the property in question should be quieted against the claims of all other persons.

The statement of the case requires much more space than the discussion.

Appellants' contentions, briefly, are that the assignment to them of the Surry-Luttrell contract, as security for advancements made, constituted an equitable mortgage; and that, even though a forfeiture had been declared by respondents, it was waived by their subsequent acts.

It is admitted by appellants' that they, as well as the original vendees and assignees under respondents' contract of sale, were in default.

The theory of appellants that their interest was that of an equitable mortgage upon the land involved is untenable. They had no more than an equitable mortgage on their assignor's (Luttrell's) equity, if any. Respondents had at no time, by any instrument or act, joined with Luttrell in making any contract of security with Luttrell's assignees, including appellants. What Luttrell held from respondents under his real estate purchase contract was simply an executory contract. We have so often and consistently held that such purchase contract conveys no element of title, legal or equitable, in or to the land, that it is unnecessary to cite authorities upon that question. Hence, what Luttrell had to assign was his interest in an executory contract for the purchase of land. His assignee could take nothing but such rights as he had, whether as against the vendor or against a third person. 39 Cyc. 1667. Therefore, Luttrell had no equitable mortgage, nor did he assign one. Appellants acquired no such thing as an equitable mortgage upon the real estate.

Neither is there any merit in the contention that respondents waived the forfeiture after they declared and stood upon the same. While they had theretofore waived many defaults, after they declared the forfei-

ture and brought the action of forfeiture, they did absolutely nothing which would tend to constitute a waiver, either by express or implied agreement.

To constitute waiver otherwise than by express agreement, there must be unequivocal acts or conduct of the vendor evincing an intent to waive. Nothing short of this will amount to a waiver. Conduct of the vendor which does not thoroughly show that he regards the contract as in full force and effect does not establish a waiver. 39 Cyc. 1392; *Moran & Co. v. Palmer,* 36 Wash. 684, 79 Pac. 476.

There is no doubt that the appellants are subordinate in time and right to respondents, and Luttrell's interests have passed to Doelle. Appellants stand in no relation of privity with Doelle, and cannot take advantage of whatever rights passed to and were acquired by Doelle under the stipulation entered into with him.

The decree of the trial court is right and is affirmed.

Main, C. J., Mackintosh, Fullerton, and Mitchell, JJ., concur.