## PENN MUT. LIFE INS. CO. v. ASHTON.
### No. 1567.

Circuit Court of Appeals, Tenth Circuit.
Dec. 27, 1937.

———◆———

J. S. Simmons, of Hutchinson, Kan. (Alva L. Fenn and Herbert E. Ramsey, both of Hutchinson, Kan., on the brief), for appellant.

Erskine Wyman and Ellis Clark, both of Hutchinson, Kan. (Charles Hall and Max Wyman, both of Hutchinson, Kan., on the brief), for appellee.

Before BRATTON and WILLIAMS, Circuit Judges, and SYMES, District Judge.

BRATTON, Circuit Judge.

Plaintiff instituted this action to recover upon a policy of insurance insuring the life of her late husband. Trial by jury was waived and the cause submitted to the court upon the admissions contained in the pleadings and a stipulation of facts. Plaintiff prevailed and defendant appealed.

The policy, issued on March 18, 1926, was a 10-year term contract. It provided that it was issued in consideration of the payment in advance at the home office of the company of an annual premium of $65.95, a semiannual premium of $33.65, or a quarterly premium of $17.15; and it contained a grace period of 31 days for the payment of any premium after the first. It was a participating policy and provided that the dividends may be used (1) in reduction of premium, or (2) to accumulate and bear compound interest; and that, if no other option be selected, they should be paid in cash; and the application, a copy of which was attached to the policy, provided that the surplus accruing should be applied to the reduction in premiums. By mutual agreement of the parties, premiums were paid quarterly after March 18, 1928.

The quarterly premium due December 18, 1934, was paid; but that due March 8, 1935, was not paid by the insured. At the time that premium became due, there was an accrued dividend on the policy of $23.25. It was the uniform practice of the company, where a policy contained a provision for the application of an accrued dividend to the payment of premium and the premium was payable quarterly, to prorate the dividend credit to the quarterly payments. That custom was followed in settling the quarterly premium of March 18, 1928, and each premium thereafter; and the assured made no objection or request for change. The accrued dividend of $23.25 due and unpaid on March 18, 1935, was prorated and $5.82 allocated to each quarterly premium. On February 26, 1935, the company sent insured a notice stating that the quarterly premium was $17.15, the dividend $5.82, and the balance due $11.33, payable March 18th; that unless it was paid by or before the date it fell due or within the 31 days' grace period, it was the intention of the company to forfeit or cancel the policy; and that all payments thereon would become forfeited and void, except as to the right to the surrender value, extended insurance, or a paid-up policy, as provided in the policy or by statute. On April 13th, the company mailed insured a further notice stating that the amount due was $11.33; that April 18th was the last day for payment; that the policy would lapse unless payment was received by that date; and that, if the entire amount could not be paid then, to communicate with the company and arrangements probably could be effected to keep the policy in force. On or about April 15th, a soliciting agent for the company interviewed insured concerning an application for conversion of the policy and in that connection stated that the policy had lapsed. Three days later insured submitted an application for conversion to a life policy, but it was rejected on May 1st. On May 22d, the general agent for the company wrote insured expressing regret that it was necessary to notify the home office that the policy had lapsed for nonpayment of premium; and that the company would assist in effecting reinstatement. On May 29th, the company issued a check for $23.25, together with a voucher reciting that the check was given for a dividend on the policy. The check was transmitted to insured by letter dated June 7th, reciting that it was the dividend awarded upon the policy, and that it was forwarded inasmuch as the policy lapsed for nonpayment of the quarterly premium due in March. The voucher recited that the check was for a cash dividend of $23.25; and that indorsement thereon should constitute a full release by the payee of all claims against the maker on account of the items set forth in the voucher. Insured retained the check until July 8th, at which time he signed the indorsement and the check was cashed at a local bank. He died on October 31, 1935, and the suit was seasonably brought.

The company had in its possession at all material times an accrued and unapplied dividend sufficient in amount to pay the stipulated premium for the quarter beginning March 18th. Despite the custom of prorating the dividend among the four quarterly premiums, it was the duty of the company to make application of sufficient of such dividend to pay the quarterly premium in order to avoid forfeiture of the policy. Upon the failure of the company to act, and in the absence of other direction by insured, the law intervened and made the application. Lamar v. Aetna Life Ins. Co., 10 Cir., 85 F.2d 141. The quarterly premium paid in that manner continued the policy in force to June 18th.

The question remains whether the policy terminated on that date or at some other time prior to the death of insured. Section 40-410, General Statutes of Kansas 1935, provides that, except as to certain policies not material here, it shall be unlawful for any insurance company, within 6 months after default in payment of any premium or installment of premium, to cancel a policy without first giving notice in writing to the insured of its intention to forfeit or cancel it. Section 40-411 provides that, before such cancellation or forfeiture can be made for the nonpayment of premium, the company shall notify the insured that the premium, stating the amount, is due and unpaid, and of its intention to forfeit or cancel the same; and that the insured shall have the right to pay such premium at any time within 30 days after the deposit of such notice in the post office, duly addressed to the insured at his last known address. Then follows a proviso that, in lieu of such notice, in case of a policy providing for a period of grace of not less than 30 days or 1 month for the payment of each premium, and con-

taining any provision for cancellation or forfeiture in case of nonpayment of the premium at the end of such period, the company may, not more than 30 days prior to the date specified in such policy when the premium will become due and payable without grace, in like manner notify the insured of the date when the premium will fall due, stating the amount, and of its intention to forfeit or cancel the policy if the premium is not paid within the period of grace provided in the policy. This policy contained a grace period of 31 days, but it did not contain any specific provision for cancellation or forfeiture in case of nonpayment of premium. For that reason it did not fall within the proviso in section 40-411. And the only way in which the company could cancel it within 6 months after June 18th was by giving a notice in compliance with the other provisions of the statute. Wegner v. Federal Reserve Life Ins. Co., 130 Kan. 600, 287 P. 591; Pedersen v. United Life Ins. Co., 139 Kan. 695, 33 P.2d 297.

■ The respective notices of February 26th and April 18th were not effective for that purpose because the statute exacts a notice of intention to forfeit under an accrued right of forfeiture. A notice given prior to the due date of a premium or within the grace period, that is, before the time within which payment may rightfully be made has expired, will not support termination or cancellation. Priest v. Bankers' Life Ass'n, 99 Kan. 295, 161 P. 631; Reynolds v. Metropolitan Life Ins. Co., 105 Kan. 669, 185 P. 1051, 7 A.L.R. 1558; Cunningham v. Globe Life Ins. Co., 106 Kan. 631, 189 P. 158; Wolford v. National Life Ins. Co., 114 Kan. 411, 219 P. 263, 32 A. L.R. 1248; Wegner v. Federal Reserve Life Ins. Co., supra; Sebal v. Columbian Nat. Life Ins. Co., 144 Kan. 266, 58 P.2d 1108. The decision of this court in Minnesota Mut. Life Ins. Co. v. Cost, 8 Cir., 72 F.2d 519, does not lend itself to the contention of the company. The policy under consideration there expressly provided that the payment of any premium or installment of premium should not maintain the policy in force beyond the date when the next premium or installment became payable. Laying stress upon that language, it was held that by its four corners the policy provided for termination upon default in payment of premium; that for such reason the proviso in the statute had application; and that the notice given complied with its provisions. This policy failed to contain a provision that the payment of a premium or an installment thereof should not maintain the policy in force beyond the time for the next payment. And it did not contain any specific provision for cancellation or forfeiture in case of nonpayment of premium. The marked difference between that case and this one is that the language contained in that policy brought it within the proviso of the statute, while the language in this policy took it outside the proviso.

■ It is urged that, even though the policy had not been previously terminated, acceptance of the check issued in payment of the accrued dividend, and the signing of the indorsement absolved the company of all liability. The notice sent on February 26th stated that the quarterly premium was $17.15, the accrued dividend $5.82, and the balance due $11.33; and that, if the amount was not paid on or before the due date or within the grace period, the company intended to cancel the policy. The notice of April 13th again stated that the amount due was $11.33, and that the policy would lapse on the 18th day of the month if it was not paid. Neither notice stated nor advised insured that the accrued dividend amounted to $23.25. That dividend being sufficient in amount to pay the quarterly premium in full and it being the duty of the company to make such payment out of it, the statement that the policy would lapse or be forfeited on April 18th was untrue. The agent for the company made the inaccurate statement to insured on or about April 15th that the policy had lapsed. The letter of May 22d carried the same inaccuracy in the expressed regret at the necessity to inform the home office that the policy had lapsed; and the letter of June 7th transmitting the check was likewise untrue in the statement that the policy had lapsed. The first, second, third, and fourth inaccurate or untrue statements were made without disclosing the fact that there existed an accrued dividend of $23.25, sufficient in amount to pay the quarterly premium in full; and the disclosure made in the letter of June 7th that the dividend was in that amount was accompanied immediately by the fifth untrue statement that the policy had already lapsed. The company had the information concerning the amount of the dividend; the insured did not. While the company was in the sole possession of such infor-

568

mation, the untrue statements were made; and when the amount was finally disclosed, the disclosure was accompanied by a repetition of the inaccuracy. Liability upon a policy of insurance may be terminated by mutual consent of the parties. But it is necessary that there be a meeting of the minds. Each party must act with knowledge of the material facts. It is essential to the validity of a written release of liability that it be executed with knowledge of the facts and with an intention to release an existing or asserted liability. The undisputed facts here carry the inescapable conviction that the insured acted in ignorance of the fact that his policy was in force; that he had been repeatedly informed and believed it had lapsed; and further, that he did not intend to release or absolve the company from an existing liability upon such policy. A release executed in such circumstances does not represent a meeting of the minds, and it does not extinguish liability. Baker v. North River Ins. Co., 112 Kan. 530, 212 P. 118; Riddle v. Rankin, 146 Kan. 316, 69 P.2d 722; Conservative Life Ins. Co. v. Hutchinson, 244 Ky. 746, 52 S.W.2d 709; Cassville Roller Mill. Co. v. Ætna Ins. Co., 105 Mo.App. 146, 79 S.W. 720; Tabor v. Michigan Mutual Life Ins. Co., 44 Mich. 324, 6 N.W. 830; Heinlein v. Imperial Life Ins. Co., 101 Mich. 250, 59 N.W. 615, 25 L.R.A. 627, 45 Am.St.Rep. 409.

We find no error. Accordingly, the judgment is affirmed.