No. 23,030.

NORA CURE, *Appellee*, v. THE MIDLAND LIFE INSURANCE COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. LIFE INSURANCE—*Default in Payment of First Premium—No Policy Delivered—Death of Assured—No Insurance in Force—No Waiver.* In an insurance contract it was stipulated that the policy should not be in force until it was delivered and the first premium paid while the applicant was alive and in good health. After payment of part of the annual premium and before the delivery of the policy, the applicant died. After knowledge of his death his former employer under an arrangement for the payment of premiums due to the insurance company from the wages of insured employees, sent a check to the company which covered installments due from insured employees, and included a payment on the contract of the deceased applicant. As soon as the agent discovered that the check covered that payment the money was returned to the employer. Upon a claim that the conduct of the defendant was a waiver of the conditions precedent to a consummated contract, it is held that the evidence did not establish a waiver.

2. SAME—*What Constitutes a Waiver of a Contract Right.* To constitute a waiver of a contract right, there must be a clear, unequivocal and decisive act of the party showing an intention to relinquish the right, or acts amounting to an estoppel on his part.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed June 11, 1921. Reversed.

*W. P. Hackney, L. D. Moore,* both of Winfield, *Sam B. Sebree,* and *Frank P. Sebree,* both of Kansas City, Mo., for the appellant.

*S. A. Smith, S. C. Bloss,* and *W. L. Mullendore,* all of Winfield, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action brought by Nora Cure to recover from the Midland Life Insurance Company $1,000 upon an insurance contract made with her minor son, Hubert L. Cure. Judgment was in her favor, and defendant appeals.

The contract for insurance was arranged between Cure and G. T. Brewer, the agent of the insurance company, on July 29, 1918, and in the application it was stipulated:

"No policy issued in consequence of this application shall go into effect until it shall be actually delivered to me, and the first premium thereon shall be actually paid to the company, all during my life and good health."

After the application had been approved and registered with the insurance department, but before it was delivered, Cure was accidentally killed. There is no discord between the parties as to the clause of the contract providing that the contract was not binding until the delivery of the policy nor as to the fact that no delivery had been made. It is conceded that under the contract, delivery of the policy was a prerequisite to the consummation of the contract; but it is contended that this provision was waived by the action of the agents and officers of the company. When the application was made Cure gave his note for $29.84 as a payment towards the first annual premium and it was arranged with his employer the Empire Gas and Fuel Company, that $10 of the amount should be taken out of his wages on August 10, $10 more on August 25, and the balance of $9.84 on September 10. The

Cure v. Insurance Co.

first payment was taken from his earnings on August 10 and paid to Brewer, the agent of the insurance company. The day following the accident Brewer notified the insurance company of the death of Cure and because the policy had not been delivered and was not in force, he transmitted the $10 which had been paid to him, to the company, as he said, "to return to his folks." The vice president of the company replied that there was no liability on the application for the reason that the policy had not been delivered, and stated that delivery had been prevented by the failure of the mother of Cure to give her consent to the taking out of insurance by her minor son, and that the requests for her consent had been ignored by her. On August 25, the next pay day, which was ten days after Cure's death, the Empire Company delivered a check to Brewer covering installments on a number of notes given by Cure and other insured employees, which included $19.84, the balance due on the Cure note. The fact that the check included a payment on the Cure note was not observed by Brewer when it was delivered, but when it was discovered he paid it back to the Empire Company, and also returned the $10 installment formerly received. The check covering this amount was held by the Empire Company for a few days and it was then returned to Brewer, with the statement that the parents of Cure refused to accept it. The amount so received is still in the hands of the defendant, but when it was tendered to the parents they refused to accept it, and have insisted that the defendant was liable for the full amount named in the application. When a demand was made for the insurance, the company sent a check for $29.84, the amount of the premium paid, but it was returned with the statement that $1,000 of insurance must be paid, and if not paid suit to collect the same would be begun.

The claim of waiver is based upon the fact that payments were accepted and retained after Cure's death, and after the defendant had notice of his death. It is manifest that the defendant did not intentionally take or hold the premium money after learning of the death of Cure. It is essential to a waiver of a contract right that there be not only knowledge of it but an intention to relinquish it. It has been said that—

"To make out a case of waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part." (27 R. C. L. 909.)

The evidence shows that there was no intention on the part of the defendant or its agent to waive the condition or relinquish the right. When notice of the death was received there was prompt declaration of no liability and steps were taken towards the return of that part of the premium which had been collected. It is true that the balance of the premium $19.84, was taken out of the wages of Cure after his death, and after the notice of his death had been received by the defendant and its agent, and that this was included in a check covering installments of other employees which was turned over to the agent of the defendant. As soon as he learned that this amount was included in the check prompt and decisive action was taken by returning the money to the employer who had paid it. It was not knowingly taken nor was there any intention to retain or appropriate it. Instead of an intentional and unequivocal relinquishment of the contract right, there was a consistent insistence that there was no liability on the contract and an attempt in good faith to return the premium that had been indirectly paid through the agent of Cure's employer. Nor is there anything in the case in the nature of an estoppel, as the plaintiff was not misled by the fact that the premium was in defendant's hands for a short time. From the beginning the return of the premium was steadfastly refused. A waiver of a like condition was before the court in *Green v. Insurance Co.*, 106 Kan. 90, 186 Pac. 970. There an application for insurance was made and part of the first premium was paid, but it was stipulated that the contract should not take effect until the delivery of the policy. The policy was executed, placed in the hands of the local agent of the company for delivery, but before it was accomplished the death of the applicant occurred. Because of the serious illness of the applicant and inability to consummate the contract, the delivery of the policy was delayed, but the agent informed the wife of the applicant that the policy was valid and in force. The agent was without authority to deliver the policy unless the premium was paid and the applicant was then in good health. Upon learning of the death of the applicant

Hardware Co. v. Freeman.

the insurance company promptly disclaimed liability and it was held that while the court had been liberal in applying the doctrine of waiver in insurance cases there could be no waiver without an intention to waive the stipulated conditions and it was therefore held that waiver was not established. If the premium had been paid by Cure when the application was made and had been kept by the company until after knowledge of his death, it would not have affected the provision that the contract was to be without force until the delivery of the policy and full payment of the first premium while he was in life and good health. Of course, if the company had knowingly accepted premiums and intentionally recognized the validity of the contract and waived these conditions it would `be bound. The evidence does not show such an intention, and nothing occurring after his death tends to show an intentional relinquishment of the right or anything approaching an estoppel to deny liability.

The judgment is therefore reversed and the cause remanded with instructions to enter judgment for defendant.